No. 48,320

THE STATE OF KANSAS, *Appellee,* v. LARRY D. THOMPSON and MICHAEL PENNINGTON, *Appellants.*

(558 P. 2d 1079)

Opinion filed December 11, 1976.

*Ernest H. Moulos,* of Wichita, argued the cause, and was on the brief for the appellants.

*Christopher A. Randall,* assistant district attorney, argued the cause, and *Curt Schneider,* attorney general, *Keith Sanborn,* district attorney, and *Stephen M. Joseph,* assistant district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal in a criminal action in which the defendants-appellants, Larry D. Thompson and Michael Pennington, were tried by a jury and convicted of aggravated robbery ( K. S. A. 21-3427) and aggravated sodomy ( K. S. A. 21-3506). The defendants were also charged with kidnapping but a mistrial was declared on that charge when the jury was unable to agree on a verdict.

At the outset we must consider a motion filed by the state to dismiss the appeal of the defendant Larry D. Thompson. It is the position of the state that this court has no jurisdiction to hear the appeal because a timely notice of appeal was not filed within the time allowed by K. S. A. 22-3608. The record discloses that the defendant Thompson was convicted by a jury in the district court of Sedgwick county on May 5, 1975. Sentence was imposed on May 29, 1975. 22-3608 ( 1 ) provides in part that if sentence is imposed, the defendant may appeal from the judgment of the district court not later than ten days after the expiration of the district court's power to modify the sentence. The district court's power to modify Thompson's sentence expired on September 26, 1975, 120 days after sentence was imposed as provided by K. S. A. 21-4603 ( 2 ). The time in which Thompson could file a notice of appeal expired on October 6, 1975. A notice of appeal was filed by Thompson's counsel, Chester Lewis, on December 11, 1975, 66 days out of time. In his response to state's motion Thompson's counsel argues that the defendant Thompson was an indigent person and that, following his conviction and incarceration, an attorney was not appointed to pursue his appeal until December 21, 1975. It is undisputed that defendant Thompson was represented by counsel during the period in which an appeal could be taken. There is nothing in the record to show that defendant Thompson's counsel did not provide him with proper representation. There is no contention by defendant that his counsel was negligent or derelict in his duties to defendant Thompson. Under the circumstances we must conclude that this court has no jurisdiction of Thompson's appeal and that his appeal

should be dismissed. The supreme court has only such appellate jurisdiction as is conferred by statute pursuant to Article 3, Section 3, of the Kansas Constitution, and when the record discloses lack of jurisdiction, it is the duty of the supreme court to dismiss the appeal. (*State v. Mitchell,* 210 Kan. 470, 502 P. 2d 850.) It is the established rule in this state that this court has no jurisdiction to entertain an appeal by defendant in a criminal case, unless he takes his appeal within the time prescribed by the statutes providing for such an appeal. (*State v. Sims,* 184 Kan. 587, 337 P. 2d 704; *State v. Shores,* 185 Kan. 586, 345 P. 2d 686.) Since the defendant Thompson failed to serve and file his notice of appeal by October 6, 1975, as required by the provisions of K. S. A. 22-3608 (1), this court is without jurisdiction to hear his appeal. The appeal of defendant Thompson is dismissed.

The appeal of the defendant Michael Pennington was timely filed and we will now proceed to determine the issues which he has raised in his statement of points. We must first examine the essential facts of the case. This action arose from an incident which occurred on the evening of January 6, 1975, in Wichita. The victim, Kevin McCune, had attended a party early in the evening and left for his home about midnight as a passenger in a friend's automobile. Shortly after the drive began McCune ascertained that his friend was too intoxicated to drive and decided that he would walk home. The friend let him out of the car. After walking approximately one mile McCune was picked up by four persons in a car. The occupants in the car included defendants Thompson and Pennington, Judy McPherson, and a female named Michelle. There is some dispute as to whether McCune solicited the ride or was invited by the occupants. Prior to taking McCune home, Thompson, the driver, took Michelle to a house where she got out. Thereafter Thompson proceeded down a dirt road and stopped his vehicle. From this point on the testimony was hotly disputed.

The state presented evidence which indicated that Thompson stopped the car at a deserted location and at gunpoint obtained McCune's jewelry, wallet, and suede coat. Following this McCune was forced to have oral sex with Pennington and Thompson and finally with Miss McPherson. It was McCune's testimony that Thompson threatened to kill him if he did not cooperate. At this point a patrol car happened on the scene and intervened. One

of the officers testified that he first observed Thompson and Mc-Cune in the back seat of the car where McCune was clad only in a knit shirt. Thompson was fully dressed. When the officer reached the car, McCune ran toward the police officer screaming that he had been sexually assaulted. After calming McCune the officers placed the defendants and Miss McPherson under arrest. The defendants in their testimony denied robbing McCune and, although admitting the sexual activities, took the position that all parties consented thereto. At the trial of the case two basic issues arose: (1) Whether the defendants robbed McCune of his coat and personal belongings and (2) whether the acts of sodomy committed on that occasion were consensual or forcible. The jury resolved these issues against the defendants and found them guilty of aggravated robbery and aggravated sodomy.

The first point raised on the appeal by the defendant Pennington is that the trial court erred in not suppressing the confession made by the defendant at the police station. The factual circumstances surrounding the taking of this confession were undisputed. Following the arrest of Pennington and Thompson at the scene, the arresting officer Vinroe informed them of their *Miranda* rights. Both of the defendants indicated that they did not want to make a statement. Thompson and Pennington were then put into officer Vinroe's police car and driven to the police station. During the drive officer Forshee advised the defendants again of their *Miranda* rights. Both responded that they understood their rights and did not wish to make a statement. No further questions were asked by the arresting officers. The defendants were booked at approximately 6:00 a. m., January 7, 1975. At 9:10 a. m. on that date detective Fraipont interviewed Pennington and told Pennington that he would like to hear his side of the story. Pennington was given a form containing his constitutional rights as well as a place to indicate waiver of these rights. Pennington read the form and initialed beside each right, indicating that he understood those rights and then signed the form. He then indicated that he would talk to the detective. Pennington told Fraipont that it was McCune who had the gun and forced Pennington to engage in homosexual activities. Pennington stated that he knew nothing of McCune's jewelry or billfold but that McCune had given Miss McPherson his coat to sell for gasoline. Pennington then stated that the sexual activities were performed by mutual agreement and that no force was exerted on McCune.

The statement of Pennington was admitted into evidence at the trial following a *Jackson v. Denno* hearing. A motion to suppress the statement was overruled. Both defendants testified on their own behalf at the trial, each denied robbing McCune and, although admitting consensual sexual activities with McCune, denied that there was any force involved.

The defendant Pennington contends in substance that under the totality of the circumstances the trial court erred in not suppressing the defendant's confession. Pennington argues that this statement was not voluntarily given and was the result of successive, coercive interviews by police officers. He contends that once he told the officer at the scene of the crime that he did not wish to talk, no further interrogation could thereafter take place. He further argues that the statement was involuntary because he had been denied food and further that his level of intelligence was so low as to make it impossible, as a matter of law, for him to knowingly, intelligently, and voluntarily waive his rights. At the hearing the state and the defendant stipulated that a psychiatrist would testify that Pennington had an I. Q. of only 68.

The scope of review of this court with regard to the admissibility of confessions has been stated many times. When a trial court, pursuant to the provisions of K. S. A. 22-3215, conducts a preliminary inquiry on the admissibility of an extrajudicial statement given by an accused, and determines the statement was freely, voluntarily, and intelligently given and admits the statement into evidence at the trial, the supreme court on appellate review will accept such determination if it is supported by substantial competent evidence. (*State v. Law*, 214 Kan. 643, 522 P. 2d 320; *State v. Kanive*, 221 Kan. 34, 558 P. 2d 1075.) At the hearing on the motion to suppress, the state called as witnesses the two arresting officers and detective Fraipont. The defendant presented no evidence in opposition thereto except a stipulation that Pennington's I. Q. was 68. We have no hesitancy in holding that there was substantial competent evidence from which the trial court could find that the defendant's statement was freely, voluntarily, and intelligently given. It is clear that detective Fraipont with great care explained to Pennington his *Miranda* rights and he signed the form stating that he understood those rights. The defendant Pennington contends, however, that once a person is taken into custody and the *Miranda* warning given him, if that person states that he does not wish to make a statement,

he cannot thereafter be interrogated by the police officers. The defendant maintains that since he advised the arresting officer that he did not wish to make a statement, any statement subsequently obtained by detective Fraipont was the result of coercion as a matter of law and hence was inadmissible into evidence. This court, when faced with a similar contention in *State v. Law,* supra, declined to adopt such a rule. The court recognized that law enforcement officers should not be permitted to attempt an in-custody interrogation and, if met by refusal, to return the defendant to jail, and then repeat the procedure periodically until a statement is obtained. The court stated, however, that the prohibition against continued interrogation after a refusal to talk does not invalidate a statement thereafter given where the right to remain silent has been voluntarily and knowingly waived at a later time. The same rule is recognized and followed in *State v. Kanive,* supra. It is equally applicable here. Detective Fraipont advised Pennington of his rights and gave him a written form which contained those rights. It was not a case where the defendant was continually badgered until he decided to talk. The evidence shows that he understood his rights and later gave a statement to detective Fraipont. There is no evidence in the record that the defendant ever demanded food during the seven hours prior to giving his statement. We also reject the contention of Pennington that due to his low level of intelligence he was incapable of voluntarily and intelligently waiving his right to remain silent. The cases relied upon by defendant Pennington to establish his position are distinguishable. (*Payne v. Arkansas,* 356 U. S. 560, 2 L. Ed. 2d 975, 78 S. Ct. 844; *Davis v. North Carolina,* 384 U. S. 737, 16 L. Ed. 2d 895, 86 S. Ct. 1761; and *Dover v. State,* 227 So. 2d 296 [Miss.].) Those cases involved more extreme conditions of incarceration, lengthier interrogation, and more obvious coercion. The mental deficiencies of the defendant may be an important factor in determining whether or not a confession was voluntarily given. That fact alone, however, is not conclusive evidence on the issue. In the case now before us the trial court at the *Jackson v. Denno* hearing had before it evidence of Pennington's low I. Q. and must be presumed to have considered this evidence. The trial court was in a better position to observe the demeanor and appearance of the defendant than is this court. Considering the totality of the circumstances as contained in the entire record we have concluded that there is substantial evidence to support the trial court's finding that the confession of the

defendant Pennington was freely, voluntarily, and intelligently given and that the same was properly admitted into evidence at the trial.

The second point raised by the defendant Pennington on this appeal is that the trial court erred in overruling the defendant's motions to dismiss and for judgment of acquittal because the sodomy statutes, K. S. A. 21-3505 and 21-3506, are unconstitutional. In this state nonforcible sodomy is a class B misdemeanor and is defined in K. S. A. 21-3505 as follows:

"21-3505. Sodomy. Sodomy is oral or anal copulation between persons who are not husband and wife or consenting adult members of the opposite sex, or between a person and an animal, or coitus with an animal. Any penetration, however slight, is sufficient to complete the crime of sodomy."

The defendant Pennington in this case was charged with aggravated or forcible sodomy which is a class B felony and which is defined in K. S. A. 21-3506 as follows:

"21-3506. Aggravated sodomy. Aggravated sodomy is sodomy committed:
"(a) With force or threat of force, or where bodily harm is inflicted on the victim during the commission of the crime; or
"(b) With a child under the age of sixteen (16) years."

The defendant's constitutional attack upon the statute is multi-pronged and involves a number of constitutional provisions. The defendant attacks the constitutional validity of 21-3505 on the grounds that it discriminates against the rights of consenting homosexuals and thus violates their right of privacy created by the interaction of the First, Third, Fourth, Fifth, and Ninth Amendments of the United States Constitution, applicable to the states by virtue of the Fourteenth Amendment. It is further contended that 21-3505 constitutes a bill of attainder in violation of Article 1, Section 10, of the Constitution of the United States and is also an invalid exercise of police powers in violation of the Fourteenth Amendment by striking down a personal liberty or materially restricting its normal exercise by a homosexual and thus denies equal protection of the law. Reduced to its essence the defendant's basic ground for reversal on this point is that the sodomy statute is invalid on its face for an unconstitutional overbreadth in that it prohibits private, consensual acts of adult persons in violation of the United States Constitution's right of privacy as enunciated in *Griswold v. Connecticut,* 381 U. S. 479, 14 L. Ed. 2d 510, 85 S. Ct. 1678 (1965).

The state takes the position that the defendant was convicted of *forcing* another to engage in homosexual activities and therefore

defendant has no standing to challenge the sodomy statute on the ground that it discriminates against consenting homosexuals. In our judgment the state is correct in its position. On a number of occasions this court has recognized the rule that unconstitutional governmental action can only be challenged by a person directly affected and such a challenge cannot be made by invoking the rights of others. (*Marks v. Frantz*, 179 Kan. 638, 298 P. 2d 316; *State, ex rel., v. Fleming Co.*, 184 Kan. 674, 339 P. 2d 12; *Groene v. State*, 195 Kan. 740, 408 P. 2d 580; *Delight Wholesale Co. v. City of Overland Park*, 203 Kan. 99, 453 P. 2d 82; *Strader v. Kansas Public Employees Retirement System*, 206 Kan. 392, 479 P. 2d 860; *Manzanares v. Bell*, 214 Kan. 589, 522 P. 2d 1291.) None of our decisions involved sodomy statutes. Appellate courts in other jurisdictions have applied this general rule to constitutional challenges of sodomy statutes and have refused to consider constitutional attacks against consensual sodomy where the defendant is prosecuted for acts of forcible sodomy. We note for example, *State v. Kasakoff*, 84 N. M. 404, 503 P. 2d 1182; and *Hughes v. State*, 14 Md. App. 497, 287 A. 2d 299, which hold that where a defendant is convicted of forcible sodomy, he lacks standing to challenge the sodomy statute on the ground that it is unconstitutional in prohibiting private, consensual acts of adults. Here the basis of defendant's argument is that because the statute is unconstitutional as it applies to consenting adults, it is unconstitutional as applied to him. But the defendant was not charged as a consenting adult. He was charged and convicted of forcible sodomy and under the circumstances we hold that the defendant lacks standing to challenge the constitutional validity of the sodomy statute on the basis asserted. The fact that the sodomy statutes, when applied to consenting adults, may impair the rights of others does not bestow upon the defendant the right to challenge them in this case. The issue of the constitutionality of the statute proscribing *consensual* sodomy (K. S. A. 21-3505) is not properly before us in this case and will not be considered on this appeal. We reserve any constitutional questions which might be involved in that situation.

The defendant also attacks the constitutionality of K. S. A. 21-3506 which covers the offense of aggravated or forcible sodomy. He first contends that this statute constitutes an invalid exercise of police power but cites no cases in support of that position. In the exercise of its police power a state has a right to enact laws to promote the public health, safety, morals, and welfare of its citizens.

We have no hesitancy whatsoever in holding that acts of forcible sodomy committed by one citizen upon another may be declared to be a crime by our state legislature and that a statute making it a crime constitutes a legitimate and proper exercise of the state police power. Furthermore we do not accept defendant's contention that 21-3506 constitutes an unconstitutional bill of attainder. A bill of attainder has been defined as a legislative act which inflicts punishment on named individuals or members of an easily ascertainable group without judicial trial. The three elements of a bill of attainder are specificity in identification of the individuals affected, punishment, and lack of a judicial trial. (*United States v. O'Brien*, 391 U. S. 367, 20 L. Ed. 2d 672, 88 S. Ct. 1673 [1968].) The aggravated sodomy statute 21-3506 does not contain the elements of a bill of attainder.

Finally the defendant contends that the aggravated sodomy statute is unconstitutional because it provides for cruel and unusual punishment. The complaint here is that in Kansas forcible rape is classified as a class C felony while forcible sodomy is classified as a class B felony. Rape as a class C felony carries a maximum sentence of 20 years. Aggravated sodomy as a class B felony carries a maximum sentence of life imprisonment. In our judgment the difference in the maximum sentence to be imposed under each crime does not violate the constitutional provisions regarding equal protection of the law or cruel and unusual punishment. In classifying these crimes as class C and B felonies the legislature properly exercised its power to define and prescribe punishment for criminal offenses. (*State v. Jones*, 214 Kan. 568, 521 P. 2d 278.) We have concluded that the aggravated sodomy statute (K. S. A. 21-3506) is not unconstitutional for the reasons asserted by the defendant.

The third point raised by the defendant Pennington is that the trial court erred in failing to instruct the jury that a specific intent to deprive the owner permanently of the property taken in the robbery is an essential element of the crime of aggravated robbery. (K. S. A. 21-3427.) The instruction of the court as given required the state to prove as an element of the crime of aggravated robbery that the defendants Thompson and Pennington "unlawfully and wilfully" took property consisting of one coat, two rings, and one billfold. The court then defined the term "wilful" as meaning "intentional" as distinguished from accidental or involuntarily. By so instructing the jury the trial court clearly satisfied the requirement of *State v. Clingerman*, 213 Kan. 525, 516 P. 2d 1022, that a

general intent to commit the crime of robbery is an essential element of that crime.

The trial court's instructions did not include as an element of aggravated robbery the *specific intent* to deprive the owner permanently of his property. We have concluded that such a specific intent is not an essential element of the crime of aggravated robbery as it is defined by K. S. A. 21-3427 (Weeks 1974) which became effective on July 1, 1970, as a part of the Kansas Criminal Code. The statute defines aggravated robbery as follows:

"21-3427. **Aggravated robbery.** Aggravated robbery is a robbery committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery."

Robbery is defined in K. S. A. 21-3426 as follows:

"21-3426. **Robbery.** Robbery is the taking of property from the person or presence of another by threat of bodily harm to his person or the person of another or by force."

There is no specific intent required beyond the general intent to commit the act of forcible taking. All that is required is an intentional taking of property from the person or presence of another by force or threat of bodily harm. It has long been the law of Kansas that when the commission of an act is made a crime by statute, without any express reference to any intent, the only criminal intent necessarily involved in the commission of the offense is the intent to commit the interdicted act. ( *State v. Bush,* 45 Kan. 138, 25 Pac. 614.)

At common law the crime of robbery as forcible larceny required an *animo furandi,* a specific intent to deprive the owner of the property taken, not temporarily, but permanently. Our former robbery statutes (K. S. A. 21-527 and 21-528 [Corrick 1964]) required a "felonious" taking as an essential element of robbery. The term "felonious" was defined as requiring an intent to deprive the owner not only temporarily but permanently of his property, without color of right or excuse for the act, and to convert it to the taker's use without the consent of the owner. ( *Guffey v. Casualty Co.,* 109 Kan. 61, 197 Pac. 1098; *In re Mutchler,* 55 Kan. 164, 40 Pac. 283.)

In enacting K. S. A. 21-3426 and 21-3427 (Weeks 1974) the legislature eliminated the requirement of a "felonious taking" and required only a "taking" of the property by threat or force. The language of the new statutes broadened the statutory crime of robbery to cover *any* taking of property from the person or presence

of another by threat of bodily harm or by force. The requirement of a specific intent to deprive the owner permanently of his property was eliminated. It is sufficient under the present statutes if the taking is done with the general intent to commit the act of taking the property by threat of bodily harm or by force. For a thorough discussion of the problem in another jurisdiction see *Traxler v. State*, 251 P. 2d 815 (1952), where the Oklahoma Criminal Court of Appeals reached the same conclusion following a similar statutory change in the definition of robbery. It follows that the trial court did not err in failing to instruct the jury that a specific intent to deprive the owner permanently of the property taken is an essential element of the crime of robbery.

The final point raised by the defendant's brief pertains only to the appeal of the defendant Larry D. Thompson and has not been raised on behalf of the defendant Pennington. Since the appeal of defendant Thompson has been dismissed by this court for want of jurisdiction, we do not deem it necessary or proper to rule on that point.

For the reasons set forth above the appeal of Larry D. Thompson is dismissed and in the appeal of Michael Pennington the judgment of the district court is affirmed.