No. 48,131

State of Kansas, *Appellee*, v. Samuel Kanive, *Appellant*.

(558 P. 2d 1075)

Opinion filed December 11, 1976.

*Hugh R. McCullough,* assistant public defender, argued the cause, and *Charles E. Worden,* assistant public defender, and *Donald W. Rupert,* legal intern, were on the brief for the appellant.

*Gene M. Olander,* district attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Samuel Kanive appeals from convictions of murder in the first degree (K. S. A. 21-3401) and aggravated robbery (K. S. A. 21-3427).

The charges against Kanive stem from the brutal slaying and robbery of Otis Bomar on a county road north of Topeka in February, 1974. One of Kanive's companions was separately tried and convicted for his part in these crimes. See *State v. Jones*, 218 Kan. 720, 545 P. 2d 323.

The present appeal by Kanive concerns the sole question of whether a confession made to the police was admissible in evidence. No procedural question is raised with regard to the pretrial hearing on the motion to suppress this confession. The trial court considered the totality of the circumstances and held the confession was freely and voluntarily made.

To be admissible in evidence, as an exception to the hearsay rule under K. S. A. 60-460 (*f*), a confession or extrajudicial statement by an accused must have been freely and voluntarily made. In determining the voluntariness of a confession the question in each case is whether the defendant's will was overborne at the time of the confession; if so, the confession cannot be deemed the product of a rational intellect and a free will. (*State v. Milow*, 199 Kan. 576, 433 P. 2d 538; *State v. Jones*, supra.) The voluntary nature of a statement must be established by a preponderance of the evidence (*State v. Stephenson*, 217 Kan. 169, 535 P. 2d 940) and the burden is on the prosecution to prove the statement is voluntary and admissible (K. S. A. 22-3215 [4]).

Kanive was arrested and taken to police headquarters shortly before two o'clock one afternoon. Questioning began around 2:45 p. m. Detective Ashworth began questioning Kanive about an unrelated rape of Kanive's grandmother on which no charges had been filed. After 12 minutes of questioning by Ashworth on this subject Kanive advised Detective Ashworth he did not want to talk to him further. Thereupon Ashworth left and took no part in any later interrogation.

Officer Freeman then suggested that Kanive talk to him and to the assistant district attorney and, after Kanive was left alone for a short time, he agreed to Freeman's suggestion. Interrogation was resumed and around 5:00 p. m. Kanive began to admit his part in the Bomar robbery and murder. A court reporter was

called and the statement in question was taken around 6:30 p. m. The total time of all interrogations by Ashworth, Freeman and the assistant district attorney covered approximately three hours and forty-five minutes.

The statement, as taken and transcribed by the court reporter, was conversational in form and followed along this line:

"Q. Now, before the officers started questioning you, did they tell you what your rights were?

"A. Yeah.

"Q. Are you familiar with the Miranda warning and the words that are used in it?

"A. Well, took a while but—yeah.

"Q. All right. Now, did they give you that warning before you answered any questions at all?

"A. Well, I understood them, you know, and all of that.

"Q. At the time they told you what your rights were, did you understand what your rights were?

"A. Yeah.

"Q. And did you voluntarily go ahead and agree to talk to the officers?

"A. Yeah.

"Q. Okay, they didn't threaten you to talk to you?

"A. No.

"Q. Or make any promises about anything?

"A. No, just normal conversation.

"Q. Well, I mean they didn't say, you know, I promise you if you tell us what happened out there that, you know, I'll do something or, you know— I don't know, I wasn't here, but I'm asking you if they made a promise to you like that?

"A. No.

"Q. Did anyone coerce you—do you know what I mean by coerce?

"A. You mean bribe?

"Q. Yeah.

"A. No."

A full and complete statement of Kanive's participation in these crimes was taken and transcribed thereafter.

Appellant first attacks the statement because it was obtained after he had advised Detective Ashworth that he didn't want to talk to him further. He does not argue that the advice of rights was not given and understood by him, but he relies on the prohibition against continued in-custody interrogation after he had refused to talk to Ashworth. We recognize the teaching of *Miranda v. Arizona*, 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A. L. R. 3d 974, and the cases which followed.

It is true the appellant refused to talk to Detective Ashworth concerning the rape of Kanive's grandmother. Apparently the

subject was distasteful to him. However, after the suggestion by Officer Freeman, and a period of reflection, it appears that Kanive voluntarily agreed to talk to others concerning the Otis Bomar robbery and murder. It does not appear from the record that appellant's will was overborne at the time of the confession. The confession appears to have been the product of a rational intellect and free will after proper reflection.

The prohibition against continued interrogation in the face of a refusal to talk does not invalidate a statement thereafter given where the right to remain silent has been voluntarily and knowingly waived at a later time. (*State v. Law*, 214 Kan. 643, 648, 522 P. 2d 320.)

The confession was not inadmissible merely because interrogation was resumed by Officer Freeman and the assistant district attorney.

As a further basis for suppression of the confession appellant contends the confession was improperly induced by the promise of Detective Ashworth that the police would forget about the rape case if Kanive would cooperate with the police on the Otis Bomar murder. Detective Ashworth denied making such a promise, claiming he merely commented at the end of his part in the interrogation that the rape case was the least of Kanive's worries. The remark by Ashworth, whatever it was, would, at most, be a promise of a collateral benefit (the discontinuance of investigation into the rape of Kanive's grandmother). At the time in question no charges had been filed and nothing appears in the record as to the part Kanive might have had in that crime.

In considering the effect of a promise made by the police to an accused during an interrogation various factors have been recognized as worthy of consideration in determining the voluntariness of a subsequent confession. To render such a confession involuntary it is generally held that the promise must concern action to be taken by a public official, that the promised action must be such as would likely cause the accused to make a false statement to obtain the benefits of the promise and the promise must be made by a person whom the accused reasonably believed to have the power or authority to execute the same. (*State v. Stuart*, 206 Kan. 11, Syl. 4, 476 P. 2d 975; *State v. Harwick*, 220 Kan. 572, 576, 552 P. 2d 987; K. S. A. 60-460 [*f*] [2].) In addition it is generally recognized that a promise of some collateral benefit is less likely to induce a false confession. In the case of a promise concerning a collateral benefit, as distinguished from a promise to relieve the accused of some

consequence of the crime charged, a more stringent test is applied. To hold that a promise of some collateral benefit renders a confession involuntary it must appear that the collateral benefit promised was of a nature calculated to produce a confession irrespective of its truth or falsity. (3 Wharton's Criminal Evidence, 13th Ed., § 680, p. 464, n. 11; 29 Am. Jur. 2d, Evidence, § 561, p. 619; 23 C. J. S., Criminal Law, § 825 d, p. 214.)

We have previously considered the probable effect of a promise of collateral benefits. In *State v. Pittman,* 199 Kan. 591, 433 P. 2d 550, there was evidence that the chief of police told the defendant during questioning that if he was holding back through fear of what would happen to his family, he (the chief) would see that the proper authorities were contacted and the family would be cared for. This court held:

". . . This is not the sort of promise, either in phraseology or content, which would overcome a defendant's free and unfettered will. . . ." (p. 596.)

See also *Baker v. State,* 204 Kan. 607, 464 P. 2d 212.

A confession induced by a promise of a collateral benefit, with no assurance of benefit to accused with respect to the crime under inquiry, is generally considered voluntary and admissible in evidence, unless the circumstances surrounding the promise of the collateral benefit were such as to render the confession untrustworthy or the promise could reasonably be calculated to produce a confession irrespective of its truth or falsity.

In the present case the promise, if made, assured no benefit to the accused with respect to the crime under inquiry (the Otis Bomar murder). At most it was a promise of some collateral benefit (to discontinue further investigation of the rape of the accused's grandmother). It seems improbable that such a promise by Ashworth would induce a false confession of more serious crimes when such confession was made to another detective at a later time. In addition it is improbable that the appellant would fabricate his part in the murder and robbery of Otis Bomar in order to obtain a termination of inquiry into the rape of his grandmother, a crime with which appellant had not been charged and on which no charges were filed. We note that appellant advised the assistant district attorney in beginning his statement that no promises had been made to him by the officers.

When a trial court conducts a full pre-trial hearing on the admissibility of an extrajudicial statement by an accused, determines the statement was freely, voluntarily and intelligently given and admits

the statement into evidence at the trial, this court on appeal should accept that determination if it is supported by substantial competent evidence. (*State v. Creekmore,* 208 Kan. 933, Syl. 2, 495 P. 2d 96; *State v. Smith,* 216 Kan. 265, Syl. 1, 530 P. 2d 1215.)

After considering all the facts and circumstances surrounding the making of this confession we find there is substantial competent evidence to support the trial court's finding that the confession was voluntarily made.

Accordingly the judgment on these convictions is affirmed.