No. 48,567

STATE OF KANSAS, *Appellee,* v. WAYNE E. JOHNSON, *Appellant.*

(565 P.2d 993)

Opinion filed June 11, 1977.

*Thomas E. Osborn,* of Kansas City, argued the cause and was on the brief for the appellant.

*Nick A. Tomasic,* district attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Wayne E. Johnson was convicted of first degree murder in the death of Mary Ann Moore. He appeals the conviction and raises various trial errors including errors based on the alleged insufficiency of circumstantial evidence.

The body of Mary Ann Moore, age 26, was discovered in the back seat of her automobile between 11:30 and 12:00 midnight on August 22, 1975. The car was on 18th Street just north of Merriam Lane in Kansas City, Wyandotte County, Kansas. Police officers were called to the scene. When they arrived the body of the victim was still warm but they found no vital signs. They arrived about midnight. The victim died of multiple stab wounds in her back. She was fully clothed.

An autopsy was performed and the coroner testified he located a tampax pad in the vagina which was fully inserted, that he removed the tampax pad and made certain tests but found no evidence of recent sexual intercourse.

The police located Victoria Lombardo, a friend of the victim, who had been with Mary Ann Moore that evening. She informed the police that the victim had been drinking with her in various clubs in Missouri where they met two men, Wayne E. Johnson and Billy Greenfield. She advised the police that Mary Ann Moore was last seen by her in the company of Wayne E. Johnson at approximately 11:10 p.m. when the two drove off together in an automobile owned by Miss Moore—ostensibly to go to a club in Sugar Creek, Missouri.

Billy Greenfield was located by the police and accompanied the officers to 210 N. Clinton, Kansas City, Missouri, where the defendant-appellant lived. Greenfield testified at the trial and corroborated the testimony of Victoria Lombardo with one minor exception. He fixed the time when the defendant and Mary Ann Moore left the group at 10:30 or 10:45 p.m.

When the officers and Mr. Greenfield arrived at 210 N. Clinton, in Kansas City, Missouri, to talk with the defendant, he attempted to elude the officers by fleeing out the back door. The defendant was captured and transported to the Kansas City, Kansas, police department. The officers testified he voluntarily accompanied them to Kansas and expressed a desire to help them complete the investigation into the death of Mary Ann Moore.

The defendant gave three different versions of what happened to Mary Ann Moore. He told Billy Greenfield that Miss Moore was picked up by an unknown male at a bar in Kansas City, Missouri, and that he did not see her thereafter. He gave a second version to the police officers immediately on his return to Kansas. In a signed statement he said that he and Miss Moore had sexual intercourse in her car, that they later picked up a man by the name of John Taylor and that John Taylor killed Miss Moore when she refused to have sexual intercourse with him. Defendant stated that he was driving the car, that Miss Moore was killed in the back seat, that he became afraid of John Taylor and that he abandoned the couple and left the car on foot.

After a diligent search the police were unable to locate the man defendant had described and named as John Taylor. When they advised the defendant of this he gave a third version of what happened. The statement was taken in writing and introduced at the trial. A *Jackson-Denno* hearing was held on the voluntariness of the statement. In this statement the name of John Taylor was changed to Tony Ross. Defendant stated that Miss Moore and he had sexual intercourse twice during the evening and that he offered to perform oral sex on her. Other details of the incident were about the same as in his second version.

Several days after the body was found the police made a complete search of the murder scene. Defendant had told the police that when he abandoned the car and fled from Taylor, or Ross, that he fled in a southeasterly direction on Merriam Drive and eventually arrived at a private club some distance from where the car was located. A knife was found lying in the grass seven feet from the curb on Merriam Lane and about 90 feet east of 18th Street. A search warrant was obtained for defendant's residence and the police seized four steak knives in the kitchen which were identical to the knife found near the murder scene. The patholo-

gist testified concerning traces of blood which were found on both the knife and on the sole of one of defendant's shoes. This testimony was inconclusive because the pathologist could not identify the type or kind of blood from the minute samples available. The testimony of the pathologist did indicate that the stab wounds in the victim were not more than three inches deep and appeared to have been made with a small knife.

There was further evidence of a prior crime committed by defendant which was admitted pursuant to K.S.A. 60-455. Kathy Flakes, a young married woman, testified at the trial that a year earlier defendant had assaulted her with a steak knife after gaining unauthorized entry into her apartment, that he forced her to perform oral sex on him and that he threatened to kill her if she screamed. She originally filed charges against defendant but later dismissed them because of fear and worry over a public trial. This evidence was admitted as bearing on proof of identity.

The defendant on appeal first points to certain conflicts in the evidence and argues the state's circumstantial evidence failed to exclude every reasonable hypothesis of innocence. He states the trial court erred in refusing to sustain his motion for a directed verdict of acquittal and in failing to set aside the verdict.

In *State v. Wilson & Wentworth,* 221 Kan. 359, 559 P.2d 374, the rule which governs is stated as follows:

"It is the prerogative of the jury to determine the credibility of witnesses, the weight to be given the evidence, and the reasonable inferences of fact which may be drawn from the evidence; so, a trial judge in passing on a motion for directed verdict of acquittal should consider the evidence, keeping in mind the prerogative of the jury, and if he concludes a reasonable mind might fairly decide a defendant is guilty beyond a reasonable doubt of the crime charged, he must submit the case to the jury." (Syl. 2.)

When considering the sufficiency of circumstantial evidence to sustain a conviction of a crime on appeal the question is not whether the evidence is incompatible with any reasonable hypothesis except guilt. That question was for the jury and the trial court. The appellate court's function is limited to ascertaining whether there is a basis in the evidence for a reasonable inference of guilt. (*State v. Rincones,* 209 Kan. 176, 178, 495 P.2d 1019; *State v. Ritson,* 215 Kan. 742, 529 P.2d 90; *State v. Duncan,* 221 Kan. 714, 562 P.2d 84.)

Applying these time honored rules to the evidence in this case the appellant's claims of error based upon the insufficiency of the evidence are without merit.

The appellant next contends that identity of the murderer was not an issue in the case, that the testimony of Kathy Flakes was not admissible under K.S.A. 60-455 and that prejudicial error resulted.

The testimony was offered and admitted for proof of identity. The jury was given a proper limiting instruction. Appellant contends identity was not an issue for he admitted being at the scene and saw another man attacking the victim. In *State v. Henson,* 221 Kan. 635, 562 P.2d 51, this court considered the same issue. In *Henson* defendant admitted being in the apartment where the young woman was murdered and testified he went to the apartment to sell some drugs to a man by the name of Larry Workman. Henson further testified that when he arrived Workman was not there and the naked body of the young woman was lying on a bed in the apartment. Our holding in *Henson* would seem to control the instant case where defendant identified Taylor, or Ross, as the murderer and denied the charges by the state. Identity was held to be a substantial issue in *Henson.*

In *State v. Faulkner,* 220 Kan. 153, 551 P.2d 1247, the court set forth guidelines for evidence of prior crimes, saying:

"In ruling on the admissibility of evidence of a prior conviction under 60-455, a district court must (1) determine it is relevant to prove one of the facts specified in the statute, (2) determine that fact is a disputed material fact—*i.e.* that it is substantially in issue and (3) balance the probative value of the prior conviction evidence against its tendency to prejudice the jury." (p. 155.)

See also *State v. Watkins,* 219 Kan. 81, Syl. 10, 547 P.2d 810, and *State v. Henson,* supra, Syl. 2.

When the trial court determines there is a similarity of offenses, which similarity has relevance in proving specific matters in issue, the prior offense may then be admitted. See *State v. Gunzelman,* 210 Kan. 481, 488, 502 P.2d 705, 58 A.L.R. 3rd 522, *State v. O'Neal,* 204 Kan. 226, 231, 461 P.2d 801, and *State v. Henson,* supra. Both offenses in the present case involved assaults on young women with steak knives and included sexual relations either before or during the assaults. Both assaults allegedly took place while defendant was present. There was testimony concerning an act or offer of oral sex between the defendant and the victims. The testimony was relevant in this case on the issue of identity and was properly admitted. The identity of the murderer

of Mary Ann Moore was substantially in issue and applying the balancing procedure referred to in *State v. Bly,* 215 Kan. 168, 523 P.2d 397, there was no undue prejudicial effect in admitting the evidence of the prior offense.

Appellant next contends that the trial court erred in refusing to grant a new trial for newly discovered evidence.

The evidence bearing upon this question surfaced almost four months after the trial and after a motion for new trial had been denied. A sixty year old housewife, Anna Swaffar, got in touch with the attorney who defended the accused after reading about the trial in the local paper. At a hearing on a second motion for new trial she testified she saw a car pass her house on Highway 24 on the evening of August 22. She stated that a woman was standing in such a way that her head and shoulders were outside and above the roof of the car. The woman was screaming and the car door was open. The car was traveling from 10 to 35 miles per hour and was on the highway 50 or 60 feet from the Swaffar house. Mrs. Swaffar testified that it appeared that someone in the back seat of the car pulled the woman back into the car and closed the door. She gave a general description of the driver of the car as having long hair, a long face and irregular features. She established the time at exactly 10:00 by reason of a television newscast which her husband turned on just before the incident. She stated she had a floodlight in her yard and the only obstructions between her house and the highway were some trees and maybe some cars. She lives in Independence, Missouri, and she said a car going to Kansas on Highway 24 would have been traveling *west.* Her house was north of this four lane highway. The car she saw was traveling *east* in the outside lane on the south side of the highway. She testified that she could plainly see the man that was driving and he was looking straight ahead while the woman was screaming and the other man in the back seat pulled the woman back into the car. She described the car as having four doors and being dark in color. She testified that she did not report the incident to the police because she thought it was just a family quarrel and did not connect it with the newspaper account of the death which appeared the next morning. It was not until six months later when she read about the trial of Wayne E. Johnson that she connected the two incidents. Two months later she called the defendant's attorney. She testified she did not know Wayne E.

Johnson but had seen his picture. It is not clear in the record whether she saw his picture in the newspapers before she was shown his picture in court and identified him as the driver. She gave no reason for calling the attorney rather than the police department.

The rules for granting of a new trial for newly discovered evidence have often been stated. The granting of a new trial for newly discovered evidence is in the trial court's discretion. (*State v. Larkin,* 212 Kan. 158, 510 P.2d 123, cert. den. 414 U.S. 848, 38 L.Ed.2d 95, 94 S.Ct. 134.) A new trial should not be granted on the ground of newly discovered evidence unless the evidence is of such materiality that it would be likely to produce a different result upon re-trial. (*State v. Hale,* 206 Kan. 521, 479 P.2d 902.) The credibility of the evidence offered in support of the motion is for the trial court's consideration. (*State v. Anderson,* 211 Kan. 148, 505 P.2d 691; *State v. Larkin,* supra.) The burden of proof is on defendant to show the alleged newly discovered evidence could not with reasonable diligence have been produced at trial. (*State v. Lora,* 213 Kan. 184, 515 P.2d 1086; *State v. Arney,* 218 Kan. 369, 544 P.2d 334.) The appellate review of an order denying a new trial is limited to whether the trial court abused its discretion. (*State v. Campbell,* 207 Kan. 152, 483 P.2d 495; *State v. Anderson,* supra.)

The trial court after taking the matter under advisement denied the motion because of discrepancies which raised serious questions as to the credibility of the evidence. The evidence appeared insufficient to produce a different result on re-trial.

Mrs. Swaffar lived in Independence, Missouri. Her residence was seven or eight blocks from Captain John's Club where Johnson and Greenfield first met Miss Moore and Miss Lombardo. Defendant testified that he and Miss Moore had left Independence before they picked up Taylor, or Ross. Taylor was picked up in Kansas City, Missouri, after they had visited several other clubs and had had sexual intercourse. According to defendant's testimony the first assault on Miss Moore took place in Kansas City, Missouri, and immediately thereafter defendant drove the car across the bridge and into Kansas going *west.* The car which Mrs. Swaffar described as being dark in color and *going east* in front of her house in Independence, Missouri, could hardly be the victim's car which had a white top and was

proceeding west into Kansas when the attack first occurred. The time of the incident which Mrs. Swaffar described was definitely fixed at 10:00 p.m. by the television newscast. All the witnesses testified that Miss Moore was in good health when she left in the company of the defendant sometime after 10:30 and possibly as late as 11:10 p.m. There were other physical factors where the incident was alleged to have occurred which did not lend credibility to Mrs. Swaffar's testimony.

Considering the function of this court on appellate review, the burden on the defendant in such cases and the trial court's discretion as to the credibility and materiality of newly discovered evidence, it cannot be said the trial court abused its discretion. We determine that the motion was properly denied.

The appellant's next point concerns the written statements given to the officers. He contends these statements were rendered involuntary by an illegal arrest in Missouri, a denial of counsel in Missouri and inordinate delay in bringing him before a magistrate in Kansas.

The testimony bearing on the alleged illegal arrest and denial of counsel in Missouri was in sharp conflict. The appellant's testimony was that when the officers knocked on the door of his residence in Missouri he ran out the back door, was captured, handcuffed and brought back to Kansas after being refused permission to talk with an attorney in Missouri.

The officers testified appellant was initially handcuffed by a Missouri officer, who had a warrant for appellant's arrest on another matter, but that appellant was later released by the Missouri authorities. The Kansas officers testified that when he was released by the Missouri authorities they advised the appellant of the death of Mary Ann Moore and asked him to come to their office in Kansas and make a statement. The officers testified the appellant at that time advised them he would return to the Kansas office in order to get the matter straightened out. An officer, when testifying at the hearing on the admissibility of the statement, said appellant was not under arrest at that time and did not object to coming back to Kansas.

Appellant's friend, Billy Greenfield, testified appellant returned to Kansas without objection. Appellant testified that after he was released by the Missouri officers he voluntarily got into the car with the Kansas officers to talk to them but that they then brought him to Kansas.

Assuming that appellant was illegally arrested in Missouri and unlawfully returned to Kansas against his will, no formal charges had then been filed and no warrant was outstanding. In *State v. Shienle,* 218 Kan. 637, 545 P.2d 1129, this court reviewed the United States Supreme Court cases bearing upon the question of suppression of statements made by an accused after an illegal arrest. Although the arrest in *Shienle* was found to be legal, it was pointed out in the opinion that an illegal arrest *per se* does not require the suppression of all subsequent statements made by the accused. See *State v. Shienle,* supra, at 639. See also *Brown v. Illinois,* 422 U.S. 590, 45 L.Ed.2d 416, 95 S.Ct. 2254, and *Boag v. State,* 21 Ariz. App. 404, 520 P.2d 317. Unless the facts establish that an unlawful arrest or detention in and of itself constituted duress which would render a statement by the accused involuntary, the same rules as to admissibility of the statement are applicable as if the arrest and detention were lawful.

Appellant further contends that the statement given by him in Kansas was rendered involuntary because he was denied the right to consult with counsel in Missouri. Assuming that appellant was not given the right to consult with counsel in Missouri, it is difficult to see how that would render a later statement made by the appellant in Kansas involuntary under the facts of this case. The case was in an investigatory stage and no charges had been filed at that time. An accused is entitled to counsel at every critical stage of a criminal proceeding. This right is so well established we need not give supporting citations. However, in Missouri at the time in question appellant was wanted as a possible witness in Kansas because he was the last person seen by the witnesses in the company of the victim before her death. The investigation by the officers at that time had not focused upon appellant any more than it had focused upon Victoria Lombardo or Billy Greenfield. No statement was taken from appellant in Missouri. Under these facts and circumstances it cannot be said he was deprived of a constitutional right to counsel. See *State v. Bethea,* 196 Kan. 188, 410 P.2d 272; *State v. Anderson,* supra; and *State v. McCorgary,* 218 Kan. 358, 543 P.2d 952.

The final argument made against the statement is that of inordinate delay in bringing appellant before a magistrate. The appellant was picked up in Missouri on August 25. Both statements

were obtained on August 26. Charges were filed on August 27, and the return of the warrant indicates appellant was brought before the court that same day. There was no delay in this case, but even so delay in bringing a prisoner before a magistrate after arrest is not in and of itself a denial of due process unless it in some way prejudices his right to a fair trial. See *State v. Taylor,* 217 Kan. 706, 538 P.2d 1375; *State v. Law,* 214 Kan. 643, 522 P.2d 320; and *Underwood v. State,* 214 Kan. 633, 522 P.2d 457. No prejudice is shown here.

To be admissible, a confession must have been freely and voluntarily made. (*State v. Kanive,* 221 Kan. 34, Syl. 1, 558 P. 2d 1075.) In determining the voluntariness of a confession the question in each case is whether the defendant's will was overborne at the time of the confession; if so, the confession cannot be deemed the product of a rational intellect and a free will. (*State v. Kanive,* supra, Syl. 2.) The burden is on the prosecution to prove the voluntariness. (*State v. Kanive,* supra; K.S.A. 22-3215 [4].) When a trial court conducts a full pre-trial hearing on the admissibility of an extra judicial statement by an accused, determines the statement was freely, voluntarily and knowingly given and admits the statement into evidence at the trial, the appellate court should accept that determination if it is supported by substantial competent evidence. (*State v. Kanive,* supra, Syl. 5. See also *State v. Soverns,* 215 Kan. 775, 529 P.2d 181.)

Appellant admits that he was advised of his rights, that he signed a waiver of rights, and that he was not threatened or mistreated prior to giving the statements. There was no evidence before the court that he requested and was refused an attorney between the time the waiver was signed and the time he finished giving the statements. The facts and circumstances as shown by the record support the trial court's decision that the statements were voluntarily given. The point is without substantial merit.

Appellant's final point is that the court failed to properly instruct the court as to jurisdiction and venue. He argues that the court should have instructed the jury that if it found that Mary Ann Moore was killed in the state of Missouri it must find the defendant not guilty. The court's Instruction No. 3 was as follows:

"Under the law of the State of Kansas, if the cause of death is inflicted in one county and the death ensues in another county, the prosecution may be in either of

the counties. Death shall be presumed to have occurred in the county where the body of the victim is found."

The instruction is based on K.S.A. 22-2611. Defense counsel at trial objected to the instruction on two grounds: (1) Since the case did not involve counties but rather states, Kansas should not presume to prosecute for a murder which may have occurred in the state of Missouri; and (2) the instruction as to the presumption placed an unfair burden on the defendant to prove that the death occurred somewhere else when appellant had no knowledge of where death did occur. Appellant further asserts the court should have instructed that the presumption could be overcome by other competent evidence. However, appellant did not request this additional instruction during the proceedings below.

Taking the instructions as a whole, they adequately covered the matter. In Instruction No. 2, the court set out the material elements of the crime. The instruction reads:

"The material elements of the crime of murder in the first degree, insofar as this case is concerned, are as follows:

"a. That in this County, on or about August 22, 1975,

"b. The defendant killed Mary Ann Moore by stabbing her with a knife,

"c. That such killing was done maliciously;

"d. That it was done wilfully, and

"e. That it was done deliberately and with premeditation.

"In order to convict the defendant of murder in the first degree, the burden of proof is upon the State to prove each of the above elements beyond a reasonable doubt. If the State fails to prove any element of the crime charged, then you should return a verdict of not guilty."

This instruction required the jury to find the murder occurred in Wyandotte County.

Instruction No. 3, which included a statement that death shall be presumed to have occurred in the county where the body of the victim is found, is a correct statement of the law. K.S.A. 21-3104 provides in part:

"(1) A person is subject to prosecution and punishment under the law of this state if:

"(a) He commits a crime wholly or partly within this state: . . .

"(2) An offense is committed partly within this state if either an act which is a constituent and material element of the offense, *or the proximate result of such act,* occurs within the state. *If the body of a homicide victim is found within the state, the death is presumed to have occurred within the state."* (Emphasis supplied.)

As noted, appellant did not specifically request an instruction as to the effect of the presumption. The only evidence of the

murder occurring in Missouri is found in the testimony of defendant and that was to the effect that a John Taylor stabbed the victim while the car was in Missouri. The jury obviously rejected defendant's version of the events. There is no other evidence the murder occurred in Missouri. There was strong circumstantial evidence which would reasonably lead a person to believe the murder did occur in Kansas. The body was found in Kansas not long after the victim was seen alive. When found the body was still warm.

This court has held that venue is a question of fact to be determined by the jury and like any other fact it may be proved by circumstantial evidence. (*State v. Joseph Little,* 201 Kan. 101, 439 P.2d 383; *State v. Fleury,* 203 Kan. 888, 457 P.2d 44; *State v. Addington,* 205 Kan. 640, 472 P.2d 225; *State v. Pyle,* 216 Kan. 423, 433, 532 P.2d 1309.)

The appellant contends that his theory that Miss Moore was killed in Missouri was not presented to the jury. This court has held:

"Generally the theory of the accused is adequately set forth [covered] in the instructions by including a converse charge under which the jury may find the accused not guilty if any essential element of the crime is not proven, provided such converse charge is preceded in the instruction by a recitation of all essential elements required to be proven, in language the ordinary layman on a jury can understand." (*State v. Runnels,* 203 Kan. 513, Syl. 2, 456 P.2d 16.)

See also *State v. Potts,* 205 Kan. 42, 468 P.2d 74; *State v. Reed,* 213 Kan. 557, 516 P.2d 913.

The essential elements required to be proven were set forth in the instructions and the jury was adequately instructed if the state failed to prove that the crime was committed in Wyandotte County, Kansas, it should return a verdict of not guilty.

We have carefully considered each point raised on appeal and have found no reversible error; the judgment is affirmed.