No. 67,496

STATE OF KANSAS, *Appellee,* v. DELBERT R. MCBROOM, JR., *Appellant.*

(845 P.2d 654)

Opinion filed January 22, 1993.

*Reid T. Nelson,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was on the brief for appellant.

*Ellen H. Mitchell,* assistant county attorney, argued the cause, and *Julie McKenna,* county attorney, and *Robert T. Stephan,* attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This is an arson case. The two issues concern whether the trial court erred in failing to instruct the jury on attempted second-degree murder and in failing to suppress defendant's confession.

Delbert McBroom appeals his convictions of attempted first-degree murder (K.S.A. 1991 Supp. 21-3301 and K.S.A. 1991 Supp. 21-3401[a]) and aggravated arson (K.S.A. 21-3719). Our jurisdiction is under K.S.A. 1991 Supp. 22-3601(b)(1) (a direct appeal where a maximum sentence of life imprisonment has been imposed).

The standard of review on the instruction issue is whether there was any substantial evidence, viewed in the light most favorable to McBroom, which tends to prove attempted second-degree murder. *State v. Evans,* 251 Kan. 132, 138, 834 P.2d 335 (1992).

The confession issue standard of review is whether the admission of defendant's confession is supported by substantial competent evidence. *State v. Zimmerman,* 251 Kan. 54, 62, 833 P.2d 925 (1992).

We find no error and affirm.

### Facts

Delbert McBroom had three prior encounters with the Salina police on the day of the arson incident. The first: McBroom and his wife, Tina, filed a child in need of care complaint concerning Tina's son, Charles Ferris, Jr. (Tina previously had been married to Charles Ferris, Sr.) The second: Tina, in McBroom's presence, was arguing in a tavern parking lot with Ferris about their child. The third: An officer testified Tina said, at her residence at 1:05 a.m., that she wanted McBroom removed. The officer also testified that McBroom indicated that he was tired of Tina seeing Ferris on the side while she was married to McBroom. The officer testified that McBroom stated that Tina had threatened to kill Ferris and his girlfriend.

McBroom testified that Tina was upset and that she said someone had to stop Ferris or she was going to kill herself. McBroom

returned to his trailer, went to a Kwik Shop, and then went on to a friend's house where he drank three beers in 10 to 15 minutes. He later filled his car tank with gas and drove to his trailer.

Ferris, and two other men, were awakened at about 6:45 a.m. when someone pounded on their duplex door and yelled, "Fire" No one was injured because of the fire. Officer Soldan was called to the fire scene. According to Soldan, Ferris said he thought either Tina or McBroom had set the fire. Soldan drove to the gas stations between McBroom's residence and the Ferris duplex to determine if gas had been sold to anyone in a car like McBroom's. Soldan testified that the clerk at Wen's One informed him that a car like McBroom's was driven by a black male with straight hair who purchased a dollar's worth of gas and put it in the front seat of the car. When Soldan returned to McBroom's residence he noticed that the radiator and the hood on McBroom's car were warm.

Detective Gerald Shaft was assigned to investigate the arson. His first interview was with Tina. When Shaft saw McBroom the morning after the fire, he noticed that McBroom appeared to have black shoe polish in the left crease of his nose and on his hand, fingernails, and face (the left temple). During the initial questioning, McBroom said that he did not know anything about the fire. Shaft also asked about the shoe polish. McBroom responded that it was dirt or grease. McBroom consented to a search of his car. A black Kiwi shoe polish bottle cap was discovered during the search. The fire inspector's gas sniffer test of McBroom's person registered positive.

Detective Shaft interviewed Tina's roommate, Teresa Wilson. Shaft again spoke with McBroom and advised him of his rights. McBroom responded that he was willing to talk to the detective. Shaft advised McBroom of the evidence collected and of the information obtained from prior interviews. Shaft testified that McBroom then related what had occurred, including a description of the events that led to setting the duplex fire as well as the manner in which he had committed the arson. After the interview, Shaft took a written statement which McBroom read and signed.

Before trial, McBroom filed a motion to suppress his confession. At the supression hearing Shaft testified that he had made no threats or promises to McBroom. Shaft also denied telling McBroom that Tina would be arrested. McBroom testified that Detective Shaft concluded the interview with him by stating: "[S]ince I wasn't going to admit to it, then I could leave but he was keeping Tina there. . . . I started to go out and then he said he was going to arrest Tina for it." McBroom said at that point he told Shaft that he had set the fire. On cross-examination, McBroom claimed that he lied in the statement to prevent his wife from being arrested.

### The Suppression Hearing

At the suppression hearing, counsel advanced the argument that McBroom's background and seventh grade education should be considered. Counsel noted that the evidence indicated Tina had threatened her ex-husband and that McBroom, in attempting to protect his wife from prosecution, had made an incorrect statement. According to McBroom's reasoning, the final straw was the threat to arrest either one of them, and finally the threat to arrest Tina; consequently, the statement was coerced.

The State responded:

"[Prosecutor:] Your Honor, I don't think the defendant here claimed today he didn't understand. All his story today is he's asking you to suppress because he made a statement to protect his wife. He said he was not coerced or threatened in any manner by the police department and he just made a false statement to protect his wife and I don't think that's sufficient grounds for a suppression."

The trial court, in admitting the confession, observed there was no threat or promise made or initiated by the detective which would render McBroom's statement involuntary. McBroom had steadfastly maintained his innocence in the first interview and, when confronted with the evidence, changed his story. The trial court reasoned that if McBroom wanted to suggest to a jury that he lied to the police officers to protect his wife, then credibility of his statement, rather than the voluntariness, is the issue. The trial court stated that McBroom apparently thought he was smart enough to concoct this story but "it's certainly not a ground to suppress the statement."

Defense counsel renewed his objection to the admission of the confession at trial. According to McBroom's trial testimony, he confessed to the crime during what he identified as a third interview because Detective Shaft told him the following: "[H]e was going to arrest my wife since I wasn't going to confess to it." During a second direct examination at trial, Shaft denied that he either threatened McBroom before the statement was made or told McBroom to confess or his wife would be arrested.

## An Instruction on Attempted Second-Degree Murder

The State, not McBroom, requested that the jury be instructed on attempted second-degree murder as well as attempted first-degree murder. The trial judge refused to give the instruction.

McBroom argues that a trial court is required by statute to instruct the jury regarding all lesser crimes of which an accused might be found guilty even though such instruction has not been requested. He alleges that the trial judge should have instructed the jury on attempted second-degree murder because the crime of second-degree murder is a lesser included crime of first-degree murder, citing *State v. Seelke*, 221 Kan. 672, 675, 561 P.2d 869 (1977).

McBroom asserts that the trial court's determination that "no prior deliberation [was] alleged by the defendant" meant that the State's ability to prove premeditation was weakened and that "[t]he trial court's failure to instruct the jury on second-degree murder amounted to a finding as a matter of law that premeditation existed." Consequently, McBroom believes the determination of premeditation should have been left to the jury. According to McBroom, evidence was presented at trial from which a lack of premeditation could reasonably have been inferred. McBroom emphasizes there were three separate occasions, beginning at 12:00 a.m. on the date of the attempted murder, in which McBroom, his wife, and her ex-husband had been in heated arguments. McBroom was upset and angry after the third incident. Further testimony was offered that Tina implored him to do something about her ex-husband or she was going to kill herself.

The State responds by observing that at trial McBroom denied setting the fire and implied that his wife Tina was the guilty party.

K.S.A. 21-3107(3) establishes the trial court's duty concerning instructions for lesser crimes. The trial court has a duty to instruct on all lesser offenses established by substantial evidence, however weak, unsatisfactory, or inconclusive the evidence may appear to the court. To refuse to so instruct the jury invades the jury's province in the trial of a case. The question is not whether, in the mind of the court, the evidence as a whole excludes the idea that the defendant is guilty of a lesser degree of the offense charged, but whether there is any substantial evidence tending to prove a lesser degree of the offense. If there is, then the question of such degree should be submitted to the jury. The unsupported testimony of the defendant alone, if tending to establish such lesser degree, is sufficient to require the court to so instruct. *State v. Deavers*, 252 Kan. 149, Syl. ¶ 1, 843 P.2d 695 (1992). The duty to instruct exists even though the instructions have not been requested. K.S.A. 21-3107(3).

We have identified attempted second-degree murder as a lesser degree of attempted first-degree murder. *State v. Dixon*, 252 Kan. 39, Syl. ¶ 2, 843 P.2d 182 (1992). The duty to instruct on a lesser included offense arises only where there is evidence upon which the accused might reasonably be convicted of the lesser offense. Because reasonableness is an element of this test, there is some weighing of the evidence which occurs. A finding of sufficient evidence tending to show the lesser degree of the crime triggers the duty. The weighing of evidence, however, is not a retrial of the case. 252 Kan. at 43.

McBroom denied committing the arson. The steps taken by McBroom, *i.e.*, using black shoe polish as camouflage, purchasing gasoline, dousing the wall with gasoline, preparing the bottle and wick, and lighting the fire, appear to be classic examples of premeditation. There was no substantive evidence to support a conviction of attempted second-degree murder. In the case at bar, the trial judge's analysis emphasized impossibility in refusing to instruct on attempted second-degree murder. The trial court did not err in failing to give such an instruction.

## McBroom's Confession

McBroom reasons that a variety of facts can support a determination that his confession was involuntary. He notes that this

court has stated that the voluntariness of a confession is determined based on the totality of the circumstances surrounding the confession. *State v. Zuniga,* 237 Kan. 788, 792, 703 P.2d 805 (1985). If the accused was deprived of his or her free will, the statement should be considered involuntary. *State v. Prince,* 227 Kan. 137, 144, 605 P.2d 563 (1980).

McBroom relies on *Jackson v. Denno,* 378 U.S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774 (1964) (coercion during an interrogation can be mental as well as physical). According to McBroom, the threat to arrest Tina constituted mental coercion. He observes that while the duration of the interrogation was not excessive, the detective's use of threats to arrest Tina "tainted the manner of the interrogation to such a degree that it rendered the resulting confession involuntary."

The State reasons that Detective Shaft testified that no threats or promises were made to McBroom. Also, McBroom was advised of and stated that he understood his *Miranda* rights. McBroom admitted that "Detective Shaft did not promise to not arrest Tina if he confessed."

In *State v. Zimmerman,* 251 Kan. 54, Syl. ¶ 8, 833 P.2d 925 (1992), we explained the analysis that is to be used when evaluating the voluntariness of a confession. We emphasized: (1) the duration and manner of interrogation; (2) the accused's ability upon request to communicate with the outside world; (3) the accused's age, intellect, and background; and (4) the fairness of the officers in conducting the interrogation.

McBroom contends that because of his low level of education he was uniquely susceptible to coercion. We have rejected a similar claim. *State v. Watkins,* 219 Kan. 81, 98, 547 P.2d 810 (1976) (A low education level does not create a per se involuntary confession. The voluntariness of the statements was reflected in the record and defendant was fully aware of his rights.).

McBroom indicated both at the pretrial hearing and at trial that he had been advised of his rights prior to giving his confession and that he had understood them. McBroom also had read and signed a written statement. When the totality of circumstances surrounding the confession is considered, there was substantial competent evidence in support of the trial court's determination that voluntariness was not an issue.

McBroom alleges that his confession was the involuntary result of a supposed threat to arrest his wife. Detective Shaft denies making the alleged threat. The alleged threat, according to McBroom, did not carry with it any direct promise regarding Tina. Any promise perceived by McBroom regarding his wife is collateral. Additionally, a promise of a collateral benefit is more stringently evaluated. *State v. Kanive,* 221 Kan. 34, 37-38, 558 P.2d 1075 (1976). The trial court considered the testimony of Shaft and McBroom and found the confession to be voluntary and admissible. The trial judge was in the best position to assess witness credibility. His judgment was supported by substantial competent evidence.

Affirmed.