No. 75,203

STATE OF KANSAS, *Appellant,* v. RUSSELL D. BASTON, *Appellee.*

928 P.2d 79

Opinion filed December 6, 1996.

*John F. Wilcox, Jr.*, assistant district attorney, argued the cause, and *Gayle B. Larkin*, assistant district attorney, *Mark A. Knight*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellant.

*Randy McGrath*, of Lawrence, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: In this criminal case the trial court suppressed the defendant's statements made to officers during interrogation based upon promises made to the defendant in exchange for his statements. Upon interlocutory appeal by the State, the Court of Appeals upheld the suppression and denied the State's appeal in an unpublished decision filed April 26, 1996. We granted the State's petition for review. Because there is substantial competent evidence supporting the trial court's suppression, we affirm.

Three men attacked the victim, Gary McCoy, at his rural trailer home. According to McCoy, the men first restrained and beat him, ransacked his home in search of money and drugs, and forced him to walk to his barn, where they stole two sacks of marijuana. The defendant, Russell D. Baston, was charged with aggravated kidnapping, K.S.A. 21-3421, aggravated robbery, K.S.A. 21-3427, and aggravated battery, K.S.A. 21-3414(a)(1)(A). McCoy was unable to fully identify the three men. He testified at the preliminary hearing that he was 70% sure that the defendant was one of the attackers. Detective Robert VanHoesen testified to the content of his interview with the defendant, which amounted to a confession of the defendant's involvement. The defendant was bound over for trial.

The defendant filed a motion to suppress the confession. He argued that his statements were involuntary because they were made in reliance on a promise of benefits made by one or more of the police investigators, that promise being a reduction of charges in the present case. The following facts and circumstances involving the defendant's confession and statements were disclosed in the suppression hearing.

After being arrested, the defendant was booked at the Douglas County jail. He immediately requested to speak to Officer Bill Shepard to discuss the substance of the charges. As Shepard was

on vacation, Officer John D. Hanson was called to speak with the defendant. Hanson stated that when he first met the defendant alone in a jail interview room, the defendant was emotional and crying. The defendant requested to see his girlfriend, Billie Jo Carter. Hanson contacted Lieutenant Suitt in the sheriff's department to arrange a visit. In addition, Hanson allowed the defendant to use the cellular telephone that the officer carried to call Carter.

Following the telephone call, Hanson advised the defendant of his *Miranda* rights. The defendant waived his rights. The interview between Hanson and the defendant lasted approximately 2 hours. Hanson testified that he made no threats or promises to the defendant during the interview. At most, Hanson testified that he would bring the defendant's cooperation to the attention of the District Attorney.

During the interview, the defendant spoke about a Johnson County burglary which he was involved in, as well as the McCoy case. Hanson was primarily interested in the Johnson County case. As Hanson was not familiar with the McCoy case, he suggested that the defendant speak with Douglas County Detective Robert VanHoesen. Hanson testified:

"We initially spoke about a case that took place in Johnson County where Russell and Amerine [a co-defendant] and another—Amerine and himself broke into a house and then we talked about the McCoy case and I told him I wasn't all that familiar with the case, the details, and that Detective VanHoesen from the Sheriff's department was working the case and that he would wish to interview him. First he says he had heard bad things about VanHoesen, and I explained that VanHoesen was a good fellow and would take care of him and wouldn't mistreat him and he agreed to speak with Detective VanHoesen at that point."

At the hearing on the motion to suppress, Hanson was questioned about any promises he might have made to the defendant.

"Q. After you told Mr. Baston that you were only interested in the gun case or the burglary in Johnson County, did you tell him that you could get the aggravated kidnapping charge dismissed?

"A. No. I am in no position to do that.

"Q. I understand you are not in any position to do it, but at any time, did you infer that you could?

"A. No. The only thing that was discussed about that case is he told me that the police were claiming things that he hadn't done and I told him it's his chance to tell his side of the story because there are people out there besides just Mr. McCoy that are telling us different than his involvement, and at that point, I said, 'Here is your chance to tell me what really took place through your eyes and I would relay that to the District Attorney's Office.' "

Baston, however, repeatedly testified that Hanson promised to drop the McCoy charges in exchange for his help on other crimes. He testified that in his initial interview with Hanson, which was not recorded on videotape, Hanson assured him that in exchange for information concerning the Johnson County gun case and other information, Hanson would "see to it that my aggravated kidnapping was dropped off my charges and aggravated part was dropped off of it." This would happen if "I was to tell them where the guns were taken to and what happened in that case and what I knew about the Gary McCoy case and any other stuff that I might know about."

Hanson contacted VanHoesen to interview the defendant. The second interview was held in the sheriff's department interview room about a half hour after the first interview. Portions of this interview were recorded on videotape. The tape was later admitted as evidence at the suppression hearing.

At the beginning of the second interview, VanHoesen warned the defendant of his rights, which the defendant again waived. Both VanHoesen and Hanson questioned the defendant this time, but neither officer was present for the entire interview.

In the second interview, VanHoesen thoroughly questioned the defendant regarding the McCoy case, among many other unsolved local burglaries. The defendant answered all questions, naming friends and acquaintances involved in past crimes. He also confessed to the crimes against McCoy, implicating the two other men involved.

At some point during the second interview, Billie Jo Carter came to meet the defendant. Carter brought a coat that had been stolen in a separate and prior burglary to turn the coat over to the police. When she arrived, only the defendant and Hanson were in the

room. During the time that she was in the interview room the video camera was shut off. She testified that promises were made:

"Q. Who said anything to you first, if you recall?

"A. Russell, when I first came in the room. He asked if I knew why he was there, and I said, 'no,' and he said that he wanted to see if it was all right with me to give them—talk to John Hanson and tell him about other cases that they needed help to solve, and if they did, he was going to help him by dropping some of the charges. And I said, 'Is that all you got to do is talk,' and he said, 'Well, yeah,' and then John Hanson said, 'Well, there is a slight possibility you might have to wear a wire,' and I said if he had to wear a wire, I didn't want him in it and I didn't want him wearing a wire, and he said he wouldn't have to wear a wire and Russell said if I didn't care that he talked, told the cops what was going on, to get his aggravated kidnapping dropped and the aggravated part charges taken off his case, he would talk to them, and John Hanson said yes, that is what was going on.

. . . .

"Q. And was Russell asking your permission, so to speak, to do that?

"A. Yeah, to make sure—if he talked to the cops and told him about other cases, that we both wanted him to get lesser charges so he wouldn't be away longer because we didn't want him to be locked up for a long time and that he just loved me and wanted to make sure if he did it, if he talked to them, that I wouldn't hate him because on the streets everybody would be saying Russell was a narc and everybody would be telling me he was a bad person and that I would leave him and I told him no."

At the close of the interview, VanHoesen and several other officers took the defendant to Wyandotte County in order to have the defendant identify houses connected with drug and stolen property crimes.

The district court took the matter under advisement in order to review the entire videotape of the interview with the defendant. The court thereafter granted the defendant's motion to suppress, citing the taped portion of the defendant's interview as persuasive that the defendant felt that he was to get something for his cooperation.

The facts are not in dispute, and based upon our standard of review we are not in a position to reweigh the facts. "In reviewing a trial court decision regarding the suppression of evidence, we review the factual underpinnings of the decision by a substantial competent evidence standard of review and review the ultimate

legal decision drawn from those facts de novo with independent judgment." *State v. Webber*, 260 Kan. 263, 274-75, 918 P.2d 609 (1996); *State v. Vandiver*, 257 Kan. 53, 57-58, 891 P.2d 350 (1995). "If the findings of the trial court on a motion to suppress evidence are based on substantial evidence, this court on review will not substitute its view of the evidence for that of the trial court." *State v. Anderson*, 259 Kan. 16, 18, 910 P.2d 180 (1996).

In the present case, the trial court determined that based on testimony and evidence presented at the suppression hearing, the confession was not voluntary. Specifically, the court stated in its order:

"A review of the videotape of the conversations between the law enforcement officers and the Defendant indicate to the Court that promises may have been made to the defendant for his confession. The law enforcement officers chose to videotape record only certain portions of their interview with the Defendant. The taped portion clearly indicates that the Defendant felt that he was to get something for his cooperation on a case in Johnson County."

The Court of Appeals found substantial competent evidence in the record to support the district court's decision that the confession was induced by a promise.

The general rules for evaluating whether a confession is voluntary have been well developed by this court:

"In determining whether a confession is voluntary, a court is to look at the totality of the circumstances. The burden of proving that a confession or admission is admissible is on the prosecution, and the required proof is by a preponderance of the evidence. Factors bearing on the voluntariness of a statement by an accused include the duration and manner of the interrogation; the ability of the accused on request to communicate with the outside world; the accused's age, intellect, and background; and the fairness of the officers in conducting the interrogation. The essential inquiry in determining the voluntariness of a statement is whether the statement was the product of the free and independent will of the accused." *State v. Morris*, 255 Kan. 964, 971, 880 P.2d 1244 (1994).

The State and the defendant list each of the enumerated factors in *Morris* and conclude that under the circumstances of this case, each factor supports their respective positions. It is not our court's function to reweigh the evidence. Rather, we must determine whether the trial court's finding is supported by substantial com-

petent evidence. See *State v. William*, 248 Kan. 389, 411, 807 P.2d 1292, *cert. denied* 502 U.S. 837 (1991).

Several factors support the lower court's decision. The defendant, age 27, has only completed a 9th grade education. In addition, he agreed to confess when he was upset about being separated from his girlfriend and unborn child with a possible jail sentence. The evidence that most persuaded the district court, however, was the testimony by both the defendant and Carter that the confession was induced with promises by Hanson. While this testimony is contradicted by Hanson's statements, the district court must have found the defendant's and Carter's testimony more credible. Further, the court found that the videotape made by the police illustrated the defendant's reluctance to talk unless a promise was met. Moreover, the trial court pointed out that law enforcement officers chose to videotape "only certain portions of their interview with the Defendant."

The initial phase of the interview with Hanson, where the alleged promise was made, was not recorded. Also, the video camera was turned off when the defendant's girlfriend came into the interview room. It was at this time that the defendant's girlfriend testified that the promises were made to the defendant.

K.S.A. 60-460(f) provides:

"Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible except:

. . . .

"(f) *Confessions.* In a criminal proceeding as against the accused, a previous statement by the accused relative to the offense charged, *but only if the judge finds that the accused* (1) when making the statement was conscious and was capable of understanding what the accused said and did and (2) *was not induced to make the statement* . . . (B) *by threats or promises concerning action to be taken by a public official with reference to the crime, likely to cause the accused to make such a statement falsely, and made by a person whom the accused reasonably believed to have the power or authority to execute the same."* (Emphasis added.)

Several rules have developed with regard to when a confession can be excluded under K.S.A. 60-460(f). In considering the effect of a promise made by the police to an accused during an interrogation

various factors have been recognized as worthy of consideration in determining the voluntariness of a subsequent confession.

" 'To render such a confession involuntary it is generally held that the promise must concern action to be taken by a public official, that the promised action must be such as would likely cause the accused to make a false statement to obtain the benefits of the promise and the promise must be made by a person whom the accused reasonably believed to have the power or authority to execute the same.' " *State v. Norris*, 244 Kan. 326, 335, 768 P.2d 296 (1989) (quoting *State v. Kanive*, 221 Kan. 34, 37, 558 P.2d 1075 [1976]).

In the present case, the alleged promise was made by Hanson, a public official acting in his capacity as a police officer. The exact nature of the promise is unclear but the defendant and his girlfriend testified that Hanson offered to drop the aggravated kidnapping charge and aggravated nature of the other charges in exchange for information on the Johnson County guns case, the Douglas County charges, and any other information the defendant may have had. When asked if the defendant believed that Hanson could accomplish a reduction of or dismissal of charges, the defendant said that he originally did not believe so but after Hanson arranged for him to see his girlfriend, he believed that Hanson could obtain leniency for him on the Douglas County charges.

The State asserts that if any promises existed, the promises were either collateral or insufficient to induce an involuntary confession. "[I]t is generally recognized that a promise of some collateral benefit is less likely to induce a false confession." *State v. Kanive*, 221 Kan. at 37. A promise of a collateral benefit is more stringently evaluated. *State v. McBroom*, 252 Kan. 376, 383, 845 P.2d 654 (1993). However, we are not dealing with a collateral benefit in this case. A promise to relieve the defendant of the charges in this case is not a collateral benefit.

Finally, the State argues that a promise to speak with the district attorney's office and to allow the defendant's girlfriend to visit are not promises sufficient to induce an involuntary confession. In *State v. Harwick*, 220 Kan. 572, 575-76, 552 P.2d 987 (1976), we held that a promise to speak to a district attorney is an insufficient inducement. Moreover, the State points out that this court has held that the promise to allow an accused to see his wife may not be

sufficient inducement if the visit is not conditioned on a confession. See *State v. Waugh*, 238 Kan. 537, 543, 712 P.2d 1243 (1986).

There is evidence indicating that Hanson, far from promising to talk with the district attorney, advised the defendant that the aggravated kidnapping charges would be taken care of if he gave evidence concerning the Johnson County cases and that the aggravated nature of the charges in this case would be removed. Moreover, the defendant was not kept from his girlfriend but she was allowed to enter the room. She testified that the promises were again made to the defendant concerning the present charges with the video camera turned off.

While the trial court did not make detailed findings of fact, the State, which has the burden to prove voluntariness, failed to request further findings in regard to the suppression. The record contains substantial competent evidence to support the trial court's suppression of the defendant's confession. Even though such evidence may be disputed, we are not in a position to reweigh the evidence, and we look to determine only whether there is substantial competent evidence to support the trial court's determination. *State v. Johnson*, 253 Kan. 75, Syl. ¶ 4, 853 P.2d 34 (1993).

Judgment of the Court of Appeals denying the State's appeal is affirmed. Judgment of the district court is affirmed and the case is remanded to the district court for further proceedings.