No. 74,415

STATE OF KANSAS, *Appellee,* v. TERRY W. HARDYWAY, *Appellant.*
(958 P.2d 618)

Opinion filed April 17, 1998.

*Elizabeth Seale Cateforis,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with her on the brief for appellant.

*Debra S. Peterson,* assistant district attorney, argued the cause, and *Thomas J. Schultz,* assistant district attorney, and *Nola Foulston,* district attorney, and *Carla J. Stovall,* attorney general, were on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This is a Fourth Amendment traffic stop search and seizure case. Defendant Terry W. Hardyway appeals his conviction on one count of possession of cocaine, K.S.A. 1994 Supp. 65-4160(a), and one count of seat belt violation, K.S.A. 8-2503. Before trial, Hardyway filed a motion to suppress the evidence obtained

during the search. The motion was denied. On appeal, he argued that the district court erred in denying the motion to suppress. In an unpublished decision, the Court of Appeals reversed and remanded. The State petitioned for review, asserting error in reversal of the district court's finding that Hardyway's consent was voluntary.

We granted the petition for review. Our jurisdiction is under K.S.A. 20-3018. A majority finds the consent to search voluntary, reverses the Court of Appeals, and affirms the district court.

## FACTS

The police received complaints that three of four residences in a four-plex in Wichita were involved with gang activity and "mostly narcotic sales." Detective Terry Fettke, Officer Shaun Price, and other officers of the Special Community Action Team (SCAT) conducted surveillance of the residences. SCAT is a unit that focuses on street level gangs and drugs. The purpose of the surveillance was to establish probable cause to obtain a warrant for a search of the residences.

The officers received information from another SCAT unit that a passenger in a brown Cadillac had entered one of the residences under surveillance. The passenger had only been there a brief period of time and returned to the car. Believing the passenger, Hardyway, might have purchased narcotics, the officers located and followed the brown Cadillac. They observed the driver change lanes without signaling, stopped the Cadillac for traffic infractions, and observed seat belt violations by both occupants. Detective Fettke testified that he immediately advised the occupants of the traffic violations. The driver consented to a search of his person. Fettke asked Hardyway if he would mind getting out of the car and going to the rear to speak with him. Hardyway complied. Fettke testified that he did not order Hardyway out of the car. Fettke informed Hardyway of his suspicions that Hardyway had just purchased drugs on Indiana Street. Fettke then asked Hardyway if he would mind being searched for narcotics or weapons. According to Fettke, Hardyway consented to the search, respond-

ing that he did not mind being searched. Fettke found crack cocaine in Hardyway's left shirt pocket.

After seizing the cocaine, arresting Hardyway, and informing him of his *Miranda* rights, Fettke questioned Hardyway. Hardyway admitted going to the residence and purchasing the cocaine.

## The Motion to Suppress

Hardyway's motion to suppress addressed the seized cocaine and his statements to the detective. Fettke testified about the surveillance and the traffic stop. Fettke said that he followed Hardyway's car because he thought the occupants may have been involved in a drug deal. Fettke pointed out that his suspicion was based upon hours of surveillance, "having direct knowledge of the persons involved in the narcotics distribution from 429 Indiana and realizing that the distribution was going on at that location before that vehicle [*sic*] even pulling up."

The district court ruled that Hardyway's statements to Fettke were inadmissible but admitted the cocaine and the lab reports. The district judge said:

"It seems to me the starting place you both agree is the Fourth Amendment to the United States Constitution and it provides, in essence, that the people shall be secure in their persons and effects from unreasonable searches and no warrant shall issue except for probable cause for them both, particularly describing places to be searched and things to be seized.

"The law has evolved, any search done without a warrant is unreasonable. The burden falls upon the State to prove that it fits within an exception to the warrant requirement of the Fourth Amendment.

"[The] State asserts here there is a voluntarily [*sic*] consent; that is, indeed, one of the exceptions, then.

"To analyze it, we must first look, does the Fourth Amendment apply to a passenger in an automobile on a public street?

"Cases have evolved, there again, as I understand their evolution, that a passenger has an expectation of privacy in an automobile being driven on a street by another.

"So then we have to look at the stop, look at the facts here to find what were the purposes of the background stop. The automobile in which the defendant was riding was being followed by the police after it had made a short stop at a place that the police were surveilling, suspecting that it might be, in the words of Officer Price, a drug house. The purpose in following the subject automobile was to get its tag number to further the investigation being done in an effort to make out a

complete application to be presented to secure a search warrant for that premise that the police suspected to be a drug house.

"In that pursuit, for the purpose of finding out what this vehicle's tag number was and its description, violations of law were observed, commonly called traffic infractions, violations of traffic ordinances of the City [of] Wichita.

"A stop was then made. The passenger, I would take it, was sitting there while the driver was asked to step from the automobile and then what Mr. Phillips [defense counsel] referred to as a *Terry*-type, limited intrusion into his person, made to check to see if he had weapons.

"There's no question raised there, that assumption adds to the facts and nothing more, and then the police turned to the passenger. That's the point Mr. Phillips raises the stop was complete. They had the tag number. They had their driver and the passenger was asked by Detective Fettke, the passenger being the defendant, "Would you mind stepping out of the car?" It was a request. The defendant voluntarily complied and then further request made by Detective Fettke of the defendant, did the defendant mind if, "I searched your person for drugs or weapons." Yes was the answer. "You may search; no, I don't mind." The search was done; contraband found. Thus this prosecution.

"The search was off of a voluntary consent, so were the police properly there at the place they searched Mr. Hardyway at the time they searched Mr. Hardyway, is what the issue really evolves down to.

"If the purpose of their stop was over, 10th Circuit has ruled in that case and followed their own ruling right along, that once the purpose of the traffic stop is over, it is over.

"It seems to me in every case they have done that, the traffic stop is a pure traffic stop, speeding or some other traffic infraction. Once the matter was handled, then the officer asked, "Do you mind if I search your car?" On those cases, the 10th Circuit has said it is not proper, it violates the Fourth Amendment to protect the person from the government.

"In this case, the investigation done prior to this stop must be considered, applied and must be used in my mind to supply the reasonable suspicion. That element gets us into a reasonable suspicion with exigent circumstances or gets into that with the information the police had concerning the known drug house, in the officer's words.

"Therefore, the search, in my mind, is proper, given the exigent circumstances. The driver was going to be given a citation and let go. The officers knew that this automobile had just made a very short stop at a place where drugs were being sold, purchased, possessed in a residence, had left that residence which was being surveilled, again."

## The Court of Appeals Opinion

In reversing the district court, the Court of Appeals said:

"There is no question that the defendant was lawfully detained during the questioning and search of the driver and that he could have been detained for the purpose of investigating the seat belt violation. Thus, up to the point that the defendant got out of the car there was no Fourth Amendment violation. See *U.S. v. Hill*, 60 F.3d 672, 682 (10th Cir. 1995)."

The Court of Appeals found that Hardyway's detention and Fettke's request that Hardyway submit to a search for weapons or drugs was unrelated to the traffic stop. Fettke's search could be justified only if the prior events at the suspected residence created a reasonable suspicion of drug activity and provided probable cause to search the defendant. The Court of Appeals then rejected the district judge's conclusion that Fettke had reasonable suspicion of drug activity. The Court of Appeals disagreed with the district court's finding that Hardyway had visited a "known" drug house. According to the Court of Appeals, the finding was not supported by evidence that rose to the level of an objective, reasonable, and articulable suspicion of illegal activity that would authorize detention of Hardyway.

The Court of Appeals concluded that the district court's determination that the consent was voluntary was based upon insufficient evidence. The panel reasoned that Fettke's testimony as to the voluntary nature of the consent was "so devoid of details as to make a totality of the circumstances analysis impossible in light of the higher, but undefined, burden of proof placed on the State by [*U.S. v.*] *Recalde*, 761 F.2d 1448 [10th Cir. 1985]."

Hardyway's convictions were set aside, and the case was remanded to the district court with directions to determine "whether the defendant's consent to be searched was voluntary in light of the heavier burden placed on the State in accordance with the factors we have suggested and any others that are pertinent to the issue."

## DISCUSSION

An inquiry into whether detention is lawful or unlawful is fact-intensive. Here, we are reviewing a district court decision on the suppression of evidence. We review the factual underpinnings of that decision by a substantial competent evidence standard. We

use a de novo standard to arrive at the ultimate legal conclusion drawn from those facts. *State v. DeMarco*, 263 Kan. 727, Syl. ¶ 1, 952 P.2d 1276 (1998). We normally give great deference to the factual findings of the district court and we do not reweigh the evidence. *State v. Reason*, 263 Kan. 405, 409, 951 P.2d 538 (1997).

The determination of voluntariness is a question of fact for the trier of fact, and the determination will not be overturned on appeal unless clearly erroneous. *State v. Ruden*, 245 Kan. 95, 105, 774 P.2d 972 (1989).

The federal appellate standard also defers to the trial court. "At a hearing on a motion to suppress, the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." *U.S. v. Walker*, 933 F.2d 812, 815 (10th Cir. 1991).

The quantum of evidence necessary to prove voluntariness is by a preponderance. *State v. Pearson*, 234 Kan. 906, 920, 678 P.2d 605 (1984).

We are not dealing here with an illegal traffic stop. The Court of Appeals recognized the legality of the stop by observing that the initial detention was proper. The stop was valid despite the officers' motives. See *Whren v. United States*, 517 U.S. 806, 135 L. Ed. 2d 89, 98, 116 S. Ct. 1769 (1996).

The issue before us is whether the Court of Appeals properly reversed the district court's denial of suppression of the evidence. The issue turns on the voluntariness of Hardyway's consent.

We said in *Reason:*

" 'The Fourth Amendment test for a valid consent to search is that the consent be voluntary, and "[v]oluntariness is a question of fact to be determined from all the circumstances, [citation omitted]." ' *Ohio v. Robinette*, 519 U.S. 33, 136 L. Ed. 2d 347, 355, 117 S. Ct. 417 (1996). In *Robinette*, after stopping a motorist for speeding, the officer checked the driver's license and registration. He asked the driver to step out of the car, issued a verbal warning to the driver, and returned the license. The officer then inquired if the driver was carrying any illegal contraband. After the driver answered "no," the officer asked if he could search the vehicle, and the driver consented. A small amount of marijuana and a controlled substance were found. The driver was arrested. The United States Supreme Court reversed Ohio's per se rule that any attempt at consensual interrogation following

a traffic stop must be preceded by telling the driver that he or she was free to go. Following a lawful traffic stop an officer is not required to say to the person that he or she is 'free to go' as a prerequisite to a voluntary consent to search." 263 Kan. at 413.

The Court of Appeals here said that the request to search can be justified only if the events at the suspected residence amount to reasonable suspicion of drug activity.

The opinion continued, by observing:

"The trial court concluded that the consent to search was voluntary; however, this conclusion was reached by the court in light of its belief that there was a reasonable suspicion that the defendant was engaged in illegal drug activity. We have held that the court erred on its latter conclusion."

The district court heard the evidence, observed the demeanor of the witnesses, and ruled: "In this case, the investigation done prior to this stop must be considered, applied and must be used in my mind to supply the reasonable suspicion." We agree.

The Court of Appeals engaged in evidence reweighing when it concluded that the events at the suspected residence did not amount to reasonable suspicion of drug activity.

We said recently:

" 'Reasonable suspicion' means a particularized and objective basis for suspecting the person stopped is involved in criminal activity. Something more than an unparticularized suspicion or hunch must be articulated. Reasonable suspicion can arise from information that is less reliable than that required to show probable cause. Both reasonable suspicion and probable cause are dependent upon the content of information possessed by the detaining authority and the information's degree of reliability. Quantity and quality are considered in the totality of the circumstances—the whole picture that must be taken into account when evaluating whether there is reasonable suspicion." *State v. DeMarco*, 263 Kan. 727, Syl. ¶ 4.

The Court of Appeals observed: "The record does not indicate when the decision was made not to ticket the driver; however, Officer Price testified that during Fettke's search of the defendant, the driver was not free to go." However, it is important to note that the record reflects a clarification not referenced by the Court of Appeals. The State clarified Price's testimony by asking: "When you say that the driver was not free to go, you mean that he had

been stopped for a traffic violation, he was being searched of his person and that was being conducted at that time and then Mr. Hardyway was being conducted of a search of his person?" Officer Price responded, "That's correct."

When a consent to search and a seizure is challenged as involuntary, the prosecution must establish the fact of voluntariness by a preponderance of the evidence, and not by clear and positive evidence or evidence beyond a reasonable doubt. *State v. Buckner*, 223 Kan. 138, Syl. ¶ 2, 574 P.2d 918 (1977).

The Court of Appeals relied on *U.S. v. Recalde*, 761 F.2d 1448 (10th Cir. 1985) "We believe that Detective Fettke's testimony as to the voluntary nature of the defendant's consent is so devoid of details as to make a totality of the circumstances analysis impossible *in light of the higher, but undefined, burden of proof placed on the State by Recalde.*" (Emphasis added). Recalde, a resident alien, was convicted of possession and intent to distribute cocaine. On appeal, he argued that the district court erred in denying his motion to suppress evidence seized during a search of his car. The police had stopped Recalde for speeding, requested his driver's license and registration, and then returned to the police car to perform a computer check. The officer testified that he had a "gut instinct" Recalde was transporting narcotics. After performing the computer check, the officer asked Recalde to step out of the car. He inquired if Recalde owned the car and if the officer could look in the trunk. Recalde consented. Nothing suspicious was found in the trunk. Recalde was escorted to the state police station between two police cars. The officers retained possession of his driver's license and registration. When they arrived, Recalde was placed in a small room and given *Miranda* warnings. In response to several questions, he again consented to a search of his car, and cocaine was discovered inside the car's interior quarter panels. 761 F.2d at 1451-52.

The federal district court's determination that Recalde's consent to search his car was voluntary was reversed. The Tenth Circuit found that under the circumstances, the consent was obtained in coercive circumstances and was involuntary. Recalde could not speak English well. He had (1) been seized from the highway; (2)

been escorted between two police cars to an empty police station by police officers who kept his driver's license and registration; and (3) never been told he was free to go. 761 F.2d at 1459.

The *Recalde* facts as well as the reasoning developed from those facts do not fit here. (We note *Recalde* is a split opinion with McWilliams, J., dissenting and Winder, J., an assigned district judge, joining Seymour, J., to form the majority.)

*U.S. v. Villa-Chaparro,* 115 F.3d 797 (10th Cir. 1997), provides us with a recent Fourth Amendment traffic stop search and seizure view from the Tenth Circuit. *Villa-Chaparro* also involved a denial of a motion to suppress evidence arising from an alleged illegal stop and detention.

*Villa-Chaparro* teaches:

"When reviewing a district court's denial of a motion to suppress, we consider the totality of the circumstances and view the evidence in a light most favorable to the government. [Citation omitted.] We accept the district court's factual findings unless those findings are clearly erroneous. *Id.* Judging the credibility of the witnesses, determining the weight to be afforded the testimony, and drawing reasonable inferences and conclusions from the testimony, are within the province of the district court. [Citation omitted.]

"The district court's ultimate determination of reasonableness under the Fourth Amendment is a question of law reviewable de novo. [Citation omitted.] However, we view the officer's conduct, as must the district court, with 'common sense' considering 'ordinary human experience.' [Citation omitted.] As we stated in *United States v. Alvarez,* 68 F.3d 1242, 1244 (10th Cir. 1995), *cert. denied,* 517 U.S. 1143, 116 S. Ct. 1436, 134 L. Ed. 2d 557 (1996): "This approach is intended to avoid unrealistic second-guessing of police officers' decisions and to accord appropriate deference to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions.' [Citation omitted.]" 115 F.3d at 800-01.

We agree.

Our conclusion in *DeMarco* is appropriate here:

"We are guided by our standard of review. We have viewed the videotape; however, the district judge heard the witnesses and observed their demeanor. We will not substitute our view of the evidence for that of the district court when, as here, the motion to suppress is supported by substantial evidence. *State v. Baston,* 261 Kan. 100, Syl. ¶¶ 1-2, 928 P.2d 79 (1996). We do not find the minimum level of objective factors justifying reasonable suspicion necessary to overrule the district court." 263 Kan. at 741.

In *DeMarco* we applied our standard of review and affirmed the district court in suppressing evidence. Here we apply the same review standard. In doing so, we affirm the district court's analysis.

The Court of Appeals is reversed. The district court is affirmed.

LOCKETT, J., dissenting: I dissent from the majority's failure to follow our rules governing how issues are raised in a petition for review and determining an issue decided contrary to the State by the Court of Appeals and not raised as error in the State's petition for review or argued before this court. Under the circumstances the majority has (1) deprived the defendant of his right to procedural due process guaranteed under the United States and Kansas Constitutions and (2) failed to recognize that whether the evidence was legally seized is a question of law and not a factual determination to be made by the district court.

## Petition For Review

Any party aggrieved by a decision of the Kansas Court of Appeals may petition the Kansas Supreme Court for discretionary review. Rule 8.03 (1997 Kan. Ct. R. Annot. 52). The petition shall contain concise statements of the following: (1) a prayer for review, clearly stating the nature of the relief sought and (2) a statement of the issues decided by the Court of Appeals for which review is sought. *Issues not presented in the petition, or fairly included therein, will not be considered by the court.*

Pursuant to K.S.A. 20-3018(b), the State petitioned for review, challenging the Court of Appeals' determination of the voluntariness of Hardyway's consent. *The State did not request review of the Court of Appeals' determination that the district court erred in finding the officers had a reasonable suspicion of drug activity at the house sufficient to stop and detain Hardyway.*

In its petition for review, the State contends that (1) *U.S. v. Recalde*, 761 F.2d 1448 (10th Cir. 1985), relied upon by the Court of Appeals, is factually different from this case; (2) *Recalde* only applies to federal cases, where egregious police behavior is thought to be involved; and (3) the Court of Appeals failed to give sufficient guidance to the district court on remand. The State's argument

focuses on the Court of Appeals' reliance on *Recalde* and asserts that *Recalde* does not require that the State prove the defendant's consent was voluntary by a level of proof greater than a preponderance of the evidence. We granted review of that issue.

## The Issue Not Presented But Decided

The district court found that the officers' justification for the traffic stop had ceased after the officers enforced the relevant traffic law. Therefore, the district court considered the officers' knowledge of the investigation of drug activity prior to the traffic stop and concluded that under the facts, the officers had reasonable articulable suspicion of prior drug activity and exigent circumstances sufficient for the officers to stop the vehicle and detain and question Hardyway. The district court found that the stop, detention, and Officer Fettke's request to search Hardyway were proper. The defendant appealed.

In the appeal, Hardyway argued that the district court erred in denying the motion to suppress the evidence seized from his person. In an unpublished decision, the Court of Appeals stated:

"There is no question that the defendant was lawfully detained during the questioning and search of the driver and that he could have been detained for the purpose of investigating the seat belt violation. Thus, up to the point that the defendant got out of the car there was no Fourth Amendment violation. See *U.S. v. Hill*, 60 F.3d 672, 682 (10th Cir. 1995).

"After the questioning and search of the driver, the officers decided not to ticket the driver because of his excellent cooperation with them. When that decision was made, the only legitimate purpose of detention was to warn the defendant about the seat belt violation. See *U.S. v. Guzman*, 864 F.2d 1512 (10th Cir. 1988). The record does not indicate when the decision was made not to ticket the driver; however, Officer Price testified that during Fettke's search of the defendant, the driver was not free to go."

The Court of Appeals then stated:

"Does an officer's request that an individual submit to a search for weapons or drugs during a traffic stop for a seat belt offense violate the second step of the *Terry* analysis when the officer has informed the individual that he suspects the detainee is in possession of drugs and the subject matter of the police-citizen encounter focuses exclusively on the officer's suspicion of drug activity? Under the facts of this case, we believe that such a request is the equivalent of an inves-

tigation into a matter unrelated to the initial stop that can be justified only if the events at the suspected residence amount to reasonable suspicion of drug activity."

The Court of Appeals found that Hardyway's detention was unrelated to the traffic stop. It determined that the officer's request that Hardyway submit to a search for weapons or drugs was an investigation into a matter unrelated to the traffic stop that could be justified only if the prior events at the suspected residence created a reasonable suspicion of drug activity and provided probable cause to search the defendant. The court rejected the district judge's conclusion that the officer had reasonable suspicion of drug activity. The Court of Appeals determined that the district court's findings that Hardyway had visited a "known" drug house was not supported by evidence that rose to the level of an objective, reasonable, and articulable suspicion of illegal activity that would authorize detention of Hardyway.

The Court of Appeals concluded that the trial court's determination that Hardyway's consent to be searched was voluntary was based upon insufficient evidence because the officer's testimony as to the voluntary nature of Hardyway's consent was "so devoid of details as to make a totality of the circumstances analysis impossible in light of the higher, but undefined, burden of proof placed on the State by [*U.S. v.*] *Recalde*, 761 F.2d 1448 [10th Cir. 1985]." Based on this conclusion, the Court of Appeals then found there were insufficient facts in the record on appeal to determine whether the questioning of Hardyway was extended because, prior to the traffic stop, the officers were suspicious that Hardyway had purchased narcotics. The State did not request review of this finding by the Court of Appeals in its petition for review.

The Court of Appeals set aside Hardyway's convictions and remanded the case to the district court with directions to determine whether (1) the initial stop of the car was a pretextual or a valid stop; (2) Hardyway had been informed of his right to refuse a request that he be searched; and (3) Hardyway's consent to be searched was voluntary "in light of the heavier burden placed on the State in accordance with the factors we have suggested and any others that are pertinent to the issue." The Court of Appeals de-

clared that the district court's analysis should include the proximity of the illegal detention to the consent, any intervening circumstances, and, particularly, the purpose and flagrancy of the officer's unlawful conduct. Several times in its opinion, the Court of Appeals referred to a "higher burden of proof" placed upon the State to prove voluntariness of the consent.

The Court of Appeals then found that Hardyway's detention after the stop was unrelated to the traffic infractions. The Court of Appeals determined that the officer's request that Hardyway submit to a search for weapons or drugs was an investigation into a matter unrelated to the traffic stop that could be justified only if the prior events at the suspected residence created a reasonable suspicion of drug activity and provided probable cause to search the defendant. The court rejected the district judge's conclusion that the officer had reasonable suspicion of drug activity. The Court of Appeals found that the district court's findings that Hardyway had visited a "known" drug house were not supported by evidence that rose to the level of an objective, reasonable, and articulable suspicion of illegal activity that would authorize detention of Hardyway.

The Court of Appeals then concluded that the trial court's determination that Hardyway's consent to be searched was voluntary was based upon insufficient evidence because the officer's testimony as to the voluntary nature of Hardyway's consent was so "devoid of details" that a totality of the circumstances analysis was impossible in light of the "higher, but undefined, burden of proof placed on the State by *Recalde*, 761 F.2d 1448."

The only issue decided by the majority was whether Hardyway's consent was voluntary. The majority never reached the issue raised in the State's petition for review; instead it determined an issue decided contrary to the State and not raised in its petition for review.

### No Reasonable Suspicion to Search

Not only does the majority determine an issue not raised, it errs in overruling the Court of Appeals' determination that there was no reasonable suspicion justifying a stop and search.

The police received complaints that three of four residences in a four-plex in Wichita were involved with gang activity and "mostly narcotic sales." Officers of the Special Community Action Team (SCAT) conducted surveillance of the residences. The purpose of the surveillance was to *establish probable cause to obtain a warrant* for the search of the residences. In other words, the officers did not have sufficient information indicating that drugs were being sold in the apartment complex to obtain a search warrant.

While investigating whether drugs were being sold, the officers were informed by another SCAT unit that a passenger in a brown Cadillac entered one of the residences under surveillance. After a brief period of time, the passenger returned to the car. Believing the passenger, Hardyway, might have purchased narcotics, the officers left the apartment complex and located and stopped the brown Cadillac. A traffic stop is a seizure within the meaning of the Fourth Amendment. *State v. McKeown*, 249 Kan. 506, 510, 819 P.2d 644 (1991).

The Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights protect against unreasonable searches and seizures of persons and property. The exclusionary rule prohibits introduction into evidence of (1) materials directly obtained from an illegal search or seizure and (2) evidence derived from the unlawful search or seizure. *Nardone v. United States*, 308 U.S. 338, 340-41, 84 L. Ed. 307, 60 S. Ct. 266 (1939); see *State v. Daly*, 14 Kan. App. 2d 310, 314, 789 P.2d 1203, *rev. denied* 246 Kan. 769 (1990). Once the officers detained Hardyway, and prior to interrogating him, the officers were required to inform him of his constitutional rights under *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966). They failed to do so. The district judge determined that due to the exigent circumstances, the officers properly stopped and detained Hardyway.

An exception to the warrant requirement is probable cause to search coupled with exigent circumstances. See *State v. Sanders*, 5 Kan. App. 2d 189, 195, 614 P.2d 998 (1980). Exigent circumstances sufficient to justify a warrantless search include situations where the police reasonably determine, from the surrounding circumstances, that the evidence will be destroyed or concealed be-

fore a search warrant can be obtained. (The police were attempting to obtain evidence sufficient to obtain a search warrant for the apartment complex.) Exigent circumstances, however, do not include situations where only a mere possibility exists that evidence could be destroyed or concealed. The officers did not have sufficient evidence to obtain a search warrant for the apartment complex; therefore, they did not have sufficient evidence to stop and detain Hardyway.

Under the circumstances the officers violated Hardyway's Fourth Amendment rights. If the consent to search is preceded by a Fourth Amendment violation, the State, in addition to proving the voluntariness of the consent, must also establish, by a preponderance of the evidence, a break in the causal connection between the illegality and the evidence thereby obtained. *U.S. v. Melendez-Garcia*, 28 F.3d 1046, 1053 (10th Cir. 1994). Consent to a search operates to remove the taint of illegality of the seizure if voluntarily given. Voluntariness is measured in part by the proximity in time of the Fourth Amendment violation to the consent, by intervening circumstances, and by the purpose and flagrancy of the police officers' misconduct. *State v. Crowder*, 20 Kan. App. 2d 117, Syl. ¶ 5, 887 P.2d 698 (1994). In a hearing on a motion to suppress evidence, the State bears the burden of proving to the trial court the lawfulness of the search and seizure. The Court of Appeals' application of the factors cited in *Recalde* was correct.

Here, the consent to search was preceded by a Fourth Amendment violation. The Court of Appeals' determination is correct. The district court should be reversed, the Court of Appeals affirmed, and the case remanded to the district court with directions to determine whether the defendant's consent to search was voluntary and, particularly, whether there was a breach in the causal connection of the illegality and the evidence thereby obtained.

ALLEGRUCCI, J., joins the foregoing dissenting opinion.